Kern, Leila R., J.
The plaintiff, Marita Zuraitis, brought this action against Kimberden, Inc.,[1] alleging misrepresentation, violation of G.L.c. 231, §85J, monies had and received, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, promissory estoppel and violation of G.L.c. 93A. The matter is before this court on defendant’s Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons that follow, the defendant’s Motion to Dismiss for Lack of Personal Jurisdiction is ALLOWED.
BACKGROUND
Kimberden is a corporation with its offices located in Florida. Kimberden is in the business of offering show horses for sale to the public. Kimberden performs the majority of its business operations in Florida and Tennessee. Kimberden advertises on a website and has placed ads in a trade show publication that has been distributed at horse shows nationally, including in Massachusetts. Kimberden had never sold a horse, or anything else, to a resident of Massachusetts before the activity alleged in the Complaint.
In early 2007, Zuraitis was in the market for a new horse and expressed her interest to her trainer, Charlotte McEnroe. Kathy Martin, who was a horse broker, met McEnroe while they were at a horse show in Florida. It is unclear who initiated discussion regarding Zuraitis’s search for a horse, but through McEnroe, Zuraitis learned that Kimberden had some horses for sale that might interest her. In March 2007, Zuraitis and her daughter went to Florida several times to inspect and ride the horses she might be *427 interested in purchasing. Zuraitis also had a veterinarian examine Santana Row.
On March 14, 2007, Zuraitis purchased a horse she believed to be “Santana Row” from Kimberden. She wired $95,000.00 to Martin, who was in North Carolina, who then forwarded the purchase price to Kimberden after taking out a commission. Ahorse was delivered to a company in Florida that Zuraitis hired to transport it back to Massachusetts.
After Zuraitis received the horse, she discovered the horse she purchased was actually a different horse, named “Tommy.” The horse Zuraitis received was not suitable for the activities that Kimberden had represented the horse would be able to perform and was in poor health. Zuraitis and Kimberden contacted each other several times after Zuraitis purchased the horse, in an attempt to reach an agreement as to the health of the horse and how to proceed.
DISCUSSION
The burden is on the plaintiff to establish sufficient facts on which to predicate personal jurisdiction over a defendant when a motion to dismiss is brought pursuant to Mass.R.Civ.P. 12(b)(2). Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). A court is “to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.” Cepeda v. Kass, 62 Mass.App.Ct. 732, 737-38 (2004), quoting Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992). This court will assume the specific facts alleged by the plaintiff to be true and construe them in the light most favorable to the plaintiffs jurisdictional claim. Cepeda, 62 Mass.App.Ct. at 737-38.
In a diversity case, such as the one at bar, personal jurisdiction of a nonresident must satisfy both the Massachusetts longarm statute, G.L.c. 223A, §3, and the Due Process Clause of the Fourteenth Amendment. Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). The Supreme Judicial Court has held that the long-arm statute is to be coextensive with the outer limits of the United States Constitution. “Automatic” Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441 (1972).
I. Longarm Statute
Zuraitis asserts that personal jurisdiction may be exercised over Kimberden pursuant to either G.L.c. 223A, §3(a) or (d). Section 3(a) provides for personal jurisdiction over persons “transacting any business in this commonwealth.” Section 3(d) provides for personal jurisdiction over a non-Massachusetts resident who has caused “tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.”
This court holds that jurisdiction may not be exercised over Kimberden under the longarm statute. Exercising jurisdiction under §3(a) is not appropriate in this case because Kimberden has not “transacted any business [in Massachusetts]All of the relevant business transacted in this case occurred in Florida.[2] Kimberden’s principal place of business is Florida and the parties met, both in person and through agents, in Florida several times. According to Zuraitis’s affidavit, it was Zuraitis’s trainer who “mentioned to Ms. Martin that [Zuraitis] was interested in purchasing a horse . . .” Kimberden’s advertisements were in a nationally-circulated trade magazine, not one that targeted Massachusetts. The horse was delivered to Zuraitis in Florida as well. See Droukas, 375 Mass. at 153 (holding that a Florida corporation did not transact business in Massachusetts under G.L.c. 223A, §3(a), where only contacts of the seller-corporation were placement of advertisement in publication distributed in Massachusetts, receipt in Florida of telephone call from buyer in regard to purchase of goods, sending of correspondence to buyer confirming sale, and shipment of goods “collect” to buyer in Massachusetts).
Likewise, jurisdiction under §3(d) is inappropriate because “tortious injury” is not alleged to have occurred. Here, “[t]he substance of the plaintiff[’s] complaint is contractual.” Roberts v. Legendary Marine Sales, 447 Mass. 860, 864 (2006). As in Legendary Marine, all of Zuraitis’s claims arise from her contract with Kimberden for the sale of goods. Zuraitis attempts to distinguish her case from Legendary Marine by referencing the language of G.L.c. 231, §85J, which makes a seller liable “in tort” for treble damages where he sells personal property by fraud or deceit. Although the statute uses the words, “in tort,” it does not change the “essence of each claim”; this is essentially a breach of contract case. See REMF Corp. v. Miranda 60 Mass.App.Ct. 905 n.4 (2004), citing Barber v. Fox, 36 Mass.App.Ct. 525, 529 (1994).
II. Minimum Contacts
Similarly, Zuraitis has failed to show that Kimberden has the requisite minimum contacts necessary for this court to exercise jurisdiction over it. The inquiry into whether the exercise of personal jurisdiction comports with due process requirements “remains whether the defendant purposefully established ‘minimum contacts’ in the forum state.” Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), quoting Burner King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The “minimum contacts” at issue must have a basis in “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Burger King Corp., 471 U.S. at 475. This “purposeful availment” test focuses on voluntariness and foreseeabilify. Id. In order for a state court’s exercise of jurisdiction to *428 comport with due process, the plaintiffs claim must arise out of, or relate to, those minimum contacts, and the assertion of jurisdiction must be reasonable, i.e., it must not offend “traditional notions of fair play and substantial justice.” Id. at 472-73.
Merely placing a product into the stream of commerce will not meet the minimum contacts inquiry, even when a seller is aware that the product will enter a forum state. Rodriguez v. Fullerton Tires, 115 F.3d 81, 85 (1st Cir. 1987); Heins v. Wilhelm Loh Wetzlar Optical Mach. GMBH, 26 Mass.App.Ct. 14, 24 (1988), quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987). While it is true that advertising in a forum state may subject an entity to personal jurisdiction there, see Heins, 26 Mass.App.Ct. at 24, advertisements and websites that do not specifically target a forum state, without more, are insufficient to meet the minimum contacts standard. See Droukas at 153; Gunner v. Elmwood Dodge, Inc., 24 Mass.App.Ct. 96, 99 (1987) (“Advertisements in general trade magazines which happen to circulate in the forum State, but which are not aimed at customers in a particular area, do not effect the requisite minimum contact”). Finally, if a seller initiates contact with a buyer in the forum state, it will weigh in favor of the courts of the forum state having jurisdiction over the seller. See Burger King Corp., 471 U.S. at 475.
At most, Kimberden had the following relevant connections to Massachusetts: Kimberden knew that a Massachusetts resident was interested in buying a horse. Phone calls and faxes were exchanged between Zuraitis and Kimberden after the sale of the horse. Kimberden advertised in a national magazine that is distributed at horse shows, including horse shows in Massachusetts. Kimberden had a website that was accessible by residents of Massachusetts.
The alleged contacts with Massachusetts are insufficient as a matter of law for Massachusetts courts to exercise jurisdiction over Kimberden. The only pre-sale contacts with Massachusetts consist of a website and an advertisement in a nationally-circulated magazine. Also, this case is distinguishable from one where a seller contacts a buyer in Massachusetts, where the seller could be said to have purposefully availed itself of the privilege of conducting activities in Massachusetts. Cf. Tatro, 416 Mass. at 763. Here, there are no allegations that Kimberden made other sales to residents of Massachusetts, or contacted any resident of Massachusetts while that resident was physically located in Massachusetts.
In both Droukas at 154, and Splaine v. Modern Electroplating, Inc., 17 Mass.App.Ct. 612, 620 (1984), the courts “emphasized the isolated nature of each transaction” in holding that Massachusetts could not exercise personal jurisdiction over the out-of-state party. Gunner, 24 Mass.App.Ct. at 99. Here, there was an isolated transaction between the parties with no evidence that Kimberden intended to purposefully avail itself of the privilege of conducting activities in Massachusetts. Therefore, the defendant’s Motion to Dismiss for Lack of Personal Jurisdiction should be ALLOWED.
ORDER
For the reasons discussed above, it is ORDERED that defendant’s Motion to Dismiss for Lack of Personal Jurisdiction be ALLOWED and the case DISMISSED.

The defendant states in their motion that the actual name of the corporation is Kimberden Farm, Inc.

Nhe post-sale contacts between Zuraitis and Kimberden do not add to the requisite contacts needed to establish jurisdiction over Kimberden. Unlike in Back Bay Farm, LLC v. Collucio, 230 F.Sup.2d 176, 186 (D.Mass. 2002), here, Kimberden did not target Massachusetts residents for business and did not make any other sales to Massachusetts residents.